Samuel M. Gold, J.
Defendant, appearing specially, moves for an order dismissing the complaint pursuant to subdivisions 1 and 2 of rule 107 of the Rules of Civil Practice which authorize motions to dismiss for lack of jurisdiction of the subject of the action and for plaintiff’s lack of legal capacity to sue. In addition, defendant moves to vacate an order appointing a receiver in sequestration of defendant’s property in this State, pursuant to section 1171-a of the Civil Practice Act, and to vacate an order directing service of the summons and complaint by publication.
The action is brought by defendant’s wife for a decree of separation. The complaint alleges that the marriage took place in Paris, Prance, on June 2, 1951. The defendant is admittedly a nonresident of this State. The action therefore is not covered by the first and second subdivisions of section 1165-a of the Civil Practice Act which limits the court’s jurisdiction over separation actions to cases coming within one of the three subdivisions of that section. The third subdivision confers jurisdiction upon this court where the marriage took place outside the State if either of the parties (1) is a resident of the State “ when the action is commenced ”, and (2) has been a resident thereof for at - least one year continuously at any time prior to the commencement of the action. The complaint alleges that plaintiff was a resident of this State at the time the action was commenced “ and still is ”, and that she “ has been a resident thereof for at least one year continuously prior to the commencement of this action, to wit, between April, 1945 and June, 1949, inclusive.”
The defendant contends that plaintiff did not reside in this State continuously for a period of one year and that she was not a resident of this State at the time that the action was commenced or at any time since.
In support of his claim that plaintiff did. not reside in this State continuously for a period of one year between April, *415 1945 and June, 1949, defendant annexes a photostat of a sworn report by plaintiff in March, 1954, before the American Consulate in Geneva, of the birth of her son in February, 1954. In answer to the question calling for ‘ ‘ precise periods of and places of American residence ’ ’, plaintiff wrote ‘ ‘ 1925-1948 in Holyoke, Mass.” Defendant also annexes a photostat of a sworn statement made by plaintiff in May, 1956, in applying for a new American passport. That statement is of no aid to' defendant, however, for it declared that plaintiff had resided continuously in the United States from 1925 to 1948 “ at Holyoke, Mass, and New York ” (italics supplied). Defendant states that “ for several years up to and through the year 1948, my wife was the intimate friend of John Eingling North, the president of Eingling Bros.-Barnum & Bailey Circus, and when she was not in Holyoke, resided during the larger part of such period in Sarasota, Florida ’ ’.
In reply, plaintiff states that she had been born and raised in Holyoke, Mass., but had not lived there for many years. She claims that in the Spring of 1945', after the completion of her education, she established her residence in New York City, and took a position in the publicity department of Hattie Carnegie, Inc. She states that she remained in this position for about one year, during which she resided at the Park Lane Hotel, as a monthly tenant; that in the Spring of 1946 she became engaged to marry John Eingling North, and about that time, accepted the invitation of his mother to be a house guest at the latter’s Sarasota home; that after remaining there for a short time she returned to New York City and rented an apartment at Hampshire House, on Central Park South, where she resided for about two years (1946 and 1947); that she regarded New York City as her permanent place of residence throughout the period commencing in the Spring of 1945; that in January, 1948, she moved into an apartment which she had leased at 400 East 57th Street, where she continued to reside until the late Fall of 1949; and that she continued to regard New York City as her permanent residence. In support of her statements, plaintiff annexes photostatie copies of pages of the New York City telephone directory, published in November, 1948, and July, 1949, which listed plaintiff’s address as 400 East 57th Street. Plaintiff also annexes a letter from the First National City Bank stating that she had a checking account there from April 30, 1948 to March 11, 1949, and that her address on the bank’s records was 400 East 57th Street.- A photostatic copy of plaintiff’s passport application dated May, 1948 states that *416 her permanent residence is 400 East 57th Street, New York City. In addition, plaintiff submits many affidavits corroborating her claim that she resided in New York City from 1945 to 1949. Plaintiff explains her omission to include New York as one of her American residences, in the 1954 report she made in Geneva, by stating that since she had been born and raised in Holyoke, Mass., she regarded that to be the best place for the Government to investigate her American citizenship, her father still residing there and she being well known in the community. She declares that she did not deem it essential that she list all the places where she had resided.
Defendant attempts, in his reply affidavit, to discredit plaintiff’s claim that she resided in New York City from 1945 to 1949, but the best that can be said, from defendant’s standpoint, is that a triable issue of fact is presented. It is well settled that an issue of residence in cases of this character is left for the trial for determination (Taubenfeld v. Taubenfeld, 276 App. Div. 873; Schwartz v. Schwartz, 253 App. Div. 924; Josephson v. Josephson, 276 App. Div. 845; Kiamie v. Kiamie, 251 App. Div. 724; Wade v. Wade, 173 App. Div. 928; Barber v. Barber, 137 App. Div. 665).
A similar situation is presented in respect of the question whether plaintiff, at the time of the commencement of this action, was a resident of New York State. Plaintiff swears that immediately on her arrival in this country, on September 15, 1958, she engaged a two-room apartment at the Hotel Pierre, in New York City, for her personal residence, and that she is still a resident at said hotel. She declares under oath that she established her residence and domicile in New York State. She explains the statement in her customs declaration, made on her arrival in this country, that she resided in France by saying that until she had set foot on United States soil she could not claim a residence here which she had not yet established. She answers defendant’s claim, that she had leased an apartment in Gstaad, Switzerland, for a period commencing in December, 1958 and intends to return there to live at the conclusion of this action, by declaring that she had leased it for defendant, at his request, in March, 1958, for the whole family to occupy. She adds that she is informed that defendant himself has occupied the apartment and that friends of his, including Lord Warwick, are now occupying it. It would serve no useful purpose to take up in detail all the various attempts of defendant to discredit plaintiff’s claim that she resided here at the commencement of the action and that she continues to *417 do so, or to consider the answers and explanations made by plaintiff in turn. The issue of plaintiff’s residence at the time the action was commenced is one which cannot be properly determined from the conflicting affidavits and which must, therefore, under the authorities previously cited, be left to the trial for resolution.
To the extent that dismissal of the complaint, pursuant to subdivision 1 of rule 107 of the Rules of Civil Practice, is sought, the motion is accordingly denied, but without prejudice to defendant’s right to plead in his answer, that the court lacks jurisdiction of the subject of the action.
Insofar as dismissal of the action is sought for plaintiff’s alleged lack of capacity to sue, the motion is denied. There is no merit to the claim that plaintiff lacks capacity to sue.
Plaintiff urges that by moving under subdivision 2 of rule 107 of the Rules of Civil Practice to dismiss for alleged lack of capacity to sue, defendant has submitted his person to the jurisdiction of the court (see Montgomery v. East Ridgelawn Cemetery, 182 Misc. 562, 563-564, affd. 268 App. Div. 857). Plaintiff also claims that by going into the merits of plaintiff’s cause of action for a separation in his attempt to secure a vacatur of the order sequestering defendant’s property, defendant has appeared generally. It is unnecessary, however, for the purposes of the application now before the court, to determine whether or not defendant has appeared generally and submitted his person to the court’s jurisdiction, for the question of the court’s jurisdiction of the subject of the action is not dependent upon the court’s jurisdiction of the person of the defendant. Lack of jurisdiction of the subject of the action may not be waived, since jurisdiction of the subject of the action cannot be conferred by consent where it does not otherwise exist (1 Carmody, New York Practice [2d ed.], § 118, pp. 136-137; Benson v. Eastern Bldg. & Loan Assn., 174 N. Y. 83, 86; 1 Carmody-Wait New York Practice, § 55, pp. 67-68; Matter of Graham, 49 N. Y. S. 2d 508, 511).
We turn now to defendant’s request that the order of sequestration be vacated, and, in turn, the order for service by publication, whose validity depends upon the validity of the order of sequestration. Defendant’s attack upon the order of sequestration is not limited to the court’s alleged lack of jurisdiction of the subject of the action. Defendant goes further- and attempts to show that plaintiff does not possess a meritorious cause of action for a separation. His papers charge plaintiff with having maintained “ a relationship incompatible with *418 marriage for a period of many months, in New York, London, Madrid and Paris, with a person who had been a guest at the home of the parties. Defendant admits plaintiff’s charge that he had frequently absented himself from plaintiff and the children for periods of a month or more, but claims that these absences were necessary in the furtherance of his professional representation of his clients, Mr. Paul Getty and Mr. Aristotle Onassis, in connection with their oil, pipeline and shipping transactions. He claims that plaintiff had become snobbish and “ stuck-up ” because of the publicity she received in connection with the marriage of Miss Grace Kelly to the Prince of Monaco, a friend of defendant’s, and that the patronizing manner in which she treated defendant’s friends and clients caused him most unfortunate personal and professional repercussions.
A motion to vacate an order of sequestration is, however, not a vehicle for determining the merits of the separation action. If the papers upon which the order of sequestration is based make out a good prima facie cause of action in favor of the plaintiff, the motion must be denied. The papers upon which the order of sequestration was obtained do make out a good prima facie case for a decree of separation in favor of plaintiff; the cases relied upon by defendant, in which attachments and an order of sequestration were vacated, are clearly distinguishable in that in said eases the plaintiff’s own papers, or undenied documentary evidence, showed that plaintiff could not succeed upon the trial. That is not the situation here.
Insofar as defendant seeks to vacate the order of sequestration and the order of publication, the motion is, therefore, also denied.
Although no such relief is asked for in the notice of motion, the moving affidavit asks that, in any event, defendant be permitted to substitute a bond in the sum of $25,000 for the property sequestered. There is, it is true, authority for the substitution of a bond for sequestered property (Kupfer v. Kupfer, 260 App. Div. 953; Bittson v. Bittson, 285 App. Div. 1061; Berger v. Berger, 233 App. Div. 855). The amount of the bond should, however, be commensurate with the value of the property sequestered {Kupfer v. Kupfer, supra). In the Kupfer case, the court increased the bond to $15,000, stating that the fixation of the bond at $7,500 was not commensurate with the apparent value of the property subject to sequestration. Defendant’s citation of the case of People ex rel. Lobell v. McDonnell (296 N. Y. 109) dealing with excessive bail bonds, is inappropriate. *419 The purpose of a bail bond is to ensure the defendant’s presence at a criminal trial. The purpose of an order of sequestration, obtained under section 1171-a of the Civil Practice Act, is to furnish a source for the payment of such sums as the court may award “ by order or judgment * * * during the pendency of the action or at the termination thereof for the education or maintenance of any of the children * * * or for the support of the wife, or for her expenses in bringing and carrying on said action and the proceedings incidental thereto or connected therewith.” The plaintiff has, as yet, made no application for alimony or a counsel fee. She claims that defendant’s average income from 1951, the date of the marriage, has exceeded $100,000 per year, none of which is subject to United States taxes. She states that defendant pays no French taxes thereon (which he denied) and that his yearly income is the equivalent of an income of $400,000 in this country. The affidavit of plaintiff upon which the order of sequestration was obtained states that, for the past four or five years, defendant has given her a monthly allowance of $2,083 to pay household expenses (exclusive of rent, telephone or electricity), clothing, servants, and general living expenses. The papers before the court show that the parties lived on a very sumptuous and grand scale, with residences in Paris and on the French Riviera. They were continually traveling, and their friends and associates were among the wealthiest and most prominent people in the social set. In these circumstances, the amount remaining sequestered, viz., $200,817.16, may not be arbitrarily reduced as excessive, at this time. If plaintiff should succeed in the action, the temporary alimony and permanent alimony (of a continuing nature), and the counsel fee may be such that the amount sequestered will not prove excessive. The application for the substitution of a bond is accordingly granted only to the extent of permitting defendant to substitute a bond in an amount equal to the amount presently sequestered. This disposition is without prejudice, however, to a subsequent application for a reduction of the bond or a release of part of the property sequestered, after alimony and counsel fee shall have been fixed by the court or shall have been denied.
Settle order.
[Supplemental opinion dated Feb. 5, 1959, on reargument, is reported in 15 Misc 2d 521.]